PMC/dm: 2021R00125

**SEALED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.  **23-00257-002-JRR** |
| | * | |
| v. | * | **(Conspiracy, 18 U.S.C. § 371;** |
| | * | **Conspiracy to Violate IEEPA, 50** |
| LARRY ALLEN VICKERS, | * | **U.S.C. § 1705(a) and (c); and** |
| | * | **Forfeiture, 18 U.S.C. § 924(d), 28** |
| Defendant. | * | **U.S.C. § 2461(c))** |
| | * | |
| | * | **UNDER SEAL** |

\*\*\*\*\*\*\*

USDC- BALTIMORE
'23 OCT 4 PM3:04

<u>SUPERSEDING INFORMATION</u>

The United States charges:

At all times relevant to this Superseding Information:

<u>Relevant Individuals and Entities</u>

1.      Defendant Larry Allen Vickers ("**VICKERS**") was the owner of the firearms-related business VT Guns, Inc. (formerly Vickers Tactical, Inc.), located in North Carolina. **VICKERS** and his businesses were FFLs and SOTs, which were authorized, in certain circumstances, to possess, manufacture, and deal in machineguns and other NFA firearms. **VICKERS** was also an internet personality known for his extensive knowledge of firearms and related merchandise. **VICKERS** operated a YouTube channel with many subscribers, on which he reviewed firearms, including many very rare firearms. **VICKERS** also offered highly sought-after firearms training courses in various locations across the country. Most trainings were priced at over $500, and some were priced at more than $1,000.

2.      Defendant Sean Reidpath Sullivan ("**SULLIVAN**") was the principal owner and operator of Trident, LLC ("Trident") (formerly Trident Rifles, LLC), located in Gambrills,

Maryland. **SULLIVAN** was also affiliated with B&T USA LLC, located in Tampa, Florida. **SULLIVAN** and Trident were Federal Firearms Licensees ("FFLs") and Special Occupational Taxpayers ("SOTs"), which allowed them, in certain circumstances, to possess, import, manufacture, and deal in fully automatic firearms (machineguns) and other firearms regulated by the National Firearms Act ("NFA"), Title 26, United States Code, Section 5801 et seq., and the Gun Control Act ("GCA"), Title 18, United States Code, Section 921 et seq. **SULLIVAN** was also an Intelligence Analyst with the Department of Homeland Security, Homeland Security Investigations ("HSI") while simultaneously operating Trident.

3.      Defendant James Christopher Tafoya ("TAFOYA") was the owner of FFLs named JCT Firearms LLC ("JCT Firearms") and JCT Manufacturing LLC ("JCT Manufacturing"), located in Albuquerque, New Mexico. TAFOYA also operated another firearms-related business, Woody's Weapons, located in Albuquerque on the same property as JCT Manufacturing and JCT Firearms.  Woody's Weapons was an FFL that was owned by TAFOYA's half-brother, T.W., but TAFOYA made all business decisions with respect to the company, to include purchases and sales of machineguns. JCT Firearms, JCT Manufacturing, and Woody's Weapons were also SOTs and were authorized, in certain circumstances, to possess, manufacture, and deal in machineguns.

4.      Defendant Matthew Jeremy Hall ("**HALL**") was the Chief of Police of the Coats Police Department in Coats, North Carolina, from approximately 2012 to mid-2020, when he retired.  During **HALL**'s tenure as Chief of Police, the town of Coats had a population of under 2,200 residents and its police department had no more than seven full-time police officers at any one time.  The Coats Police Department did not have a Special Weapons and Tactics ("SWAT") unit.  Its annual operating budget was around $1.2 million, and any expenditures over $300 required permission of the town supervisor.

5.      Defendant James Sawyer ("**SAWYER**") was the Chief of Police of the Ray Police Department in Ray, North Dakota, a position he held since at least 2015.  During **SAWYER**'s tenure as Chief of Police, the city of Ray has had a population of under 1,000 residents and its police department has had only one sworn law enforcement officer, that being **SAWYER**.  The Ray Police Department has never had a SWAT unit.

6.      C.F. was a resident of the Phoenix, Arizona area. He was not an FFL, nor had he ever been one, but he made his living selling firearms and real estate. C.F. was a collector of high-end firearms, especially those made by Heckler and Koch ("H&K") and Sig Sauer. C.F. conducted numerous firearms transactions with **SULLIVAN**.  C.F. frequently traveled to Europe to locate and source firearms that he knew would have significant resale value in the United States. C.F. was also an associate of **VICKERS** and it was the latter who put C.F. and **SULLIVAN** in contact with each other.

## Federal Regulation of Machineguns and Firearms

7.      The National Firearms Act of 1934 ("NFA"), Public Law 474, approved June 26, 1934, generally imposed a tax on the making and transfer of firearms defined by the Act, as well as a special (occupational) tax ("SOT") on persons and entities engaged in the business of importing, manufacturing, and dealing in NFA weapons.  Firearms subject to the 1934 NFA

included but were not limited to, rifles having barrels less than 16 inches in length, and machineguns.

8.      The Gun Control Act of 1968 ("GCA"), Public Law 90-618, was approved October 22, 1968.  The GCA imposed licensing and regulatory requirements on persons engaged in the business of importing, manufacturing, or dealing in firearms.

9.      Federal law generally prohibits the transfer and possession of machineguns that were imported or manufactured after May 19, 1986, except to or by bona fide government agencies.  Further, federal law generally prohibits the importation of machineguns except by or for bona fide government agencies.

10.     Relevant to this Indictment, there are two exceptions to the general prohibition on the transfer, possession, and importation of machineguns:

a.      First, machineguns may be transferred to, possessed by, and/or imported by an FFL/SOT for use as a "sample" for demonstration to potential bona fide government agency purchasers.   This exception is frequently referred to as the "dealer sales sample" exception.  Pursuant to ATF regulations, the exception requires the government agency that is requesting a demonstration of the machinegun to submit a "law letter" to the ATF.  A "law letter" is an industry term that refers to a letter signed by a government official expressing a need for a particular model of machinegun or interest in seeing a demonstration of that model of machinegun for potential future purchase by the government agency for its use in official duties. The dealer sales sample exemption requires the dealer to have a law letter, prior to purchase of the machinegun, to be submitted with the requisite ATF Form.  The law letter is also known as a "demonstration letter" or "demo letter."

b.      Second, if an FFL/SOT that is lawfully in possession of a machinegun discontinues business and/or surrenders its status as an SOT – the FFL's authorization to possess and deal in machineguns – the FFL may then transfer the machinegun to another FFL/SOT.  This exception is frequently referred to as the "out of business" exception.

11.      Federal law generally prohibits the importation of rifles with barrels less than 16" in length ("short-barreled rifles").  An exception to this general import prohibition allows an FFL/SOT to import such rifles for use as samples, employing the same method as outlined in paragraph 12a *above*.

12.      The ATF was an agency within the Executive Branch of the U.S. government that, among other things, administered and enforced federal law concerning machineguns and other firearms.  Any permanent importation of a machineguns and other firearms must first be approved by ATF's Firearms and Explosives Imports Branch ("Imports Branch").

13.      To import a machinegun or short-barreled rifle from outside the United States as a dealer sales sample for use in a demonstration to a government agency, an FFL/SOT must provide Imports Branch with an application on an ATF Form 6 and a law letter which is submitted with the application.  Except for narrow exceptions, Imports Branch would not approve an importation of a machinegun or short-barreled rifle for an FFL/SOT without a law letter.

14.      Federal law required FFLs/SOTs that purchased, sold, transferred, imported, or possessed machineguns and other firearms to keep and maintain records related to their acquisition and disposition of such firearms.  It was a crime to make or include false statements in those records.

**IEEPA and the Ukraine-Russia-Related Sanctions Regulations**

15.     The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1708, provides the President of the United States authority "to deal with any unusual and extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a).  IEEPA makes it a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to the IEEPA. 50 U.S.C. § 1705(a), (c).

16.     In March 2014, pursuant to the IEEPA, the President issued Executive Orders 13660, 13661, and 13662, thereby declaring a national emergency and finding that "the actions and policies of the Government of the Russian Federation with respect to Ukraine . . . constitute an unusual and extraordinary threat to the national security and foreign policy of the United States." E.O. 13661.  These Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, to block all property and interests in property of persons involved in the Russian Federation's military invasion of the Crimea region of Ukraine, including persons operating in the "arms or related materiel sector of the Russian Federation." E.O. 13661(a)(ii)(B).

17.     As relevant here, Executive Order 13661 prohibits, among other things, (1) "the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order," (2) "the receipt of any contribution or provision of funds, goods, or services from any such person," (3) "[a]ny transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order," and (4) "[a]ny conspiracy formed to violate any of the prohibitions set forth in this order."

6

18.     To implement these Executive Orders, including Executive Order 13661, the Office of Foreign Assets Control ("OFAC") issued certain Ukraine-/Russia-related sanctions regulations. These regulations incorporate by reference the definition of prohibited transactions set forth in Executive Order 13661.  31 C.F.R. § 589.201.  The regulations also provide that the names of persons designated pursuant to Executive Order 13661, whose property and interests are therefore blocked, are published in the Federal Register and incorporated into the Specially Designated Nationals and Blocked Persons ("SDN") List, which is published on OFAC's website.  *Id.* at Note 1.

19.     On or about July 16, 2014, pursuant to Executive Order 13661, OFAC designated JSC Kalashnikov Concern[1] ("Kalashnikov Concern") as an SDN for operating in the Russian Federation's "arms or related materiel sector."   OFAC explained that the designation was based on Kalashnikov Concern's production of "military weapons," its role as "the largest firearm producer in Russia," and its status as "a subsidiary of Russia's State Corporation of Russian Technologies (Rostec)."  As a result of OFAC's designation, and pursuant to Executive Order 13661, United States persons were and remain prohibited from providing or receiving funds, goods or services to or from JSC Kalashnikov Concern, engaging in transactions to evade such prohibitions, or conspiring to do the same.

## COUNT ONE
### (Conspiracy to Interfere with Government Functions and to Violate Federal Law Regulating Firearms)

---

[1] Specifically, OFAC designated the following entities and aliases as Specially Designated Nationals:  "Kalashnikov Concern (a.k.a. Concern Kalashnikov, a.k.a Izhevskiy Mashinostroitel'nyi Zavod OAO; f.k.a. Izhmash R&D Center; f.k.a. JSC NPO Izhmash; f.k.a. NPO Izhmash OAO; a.k.a OJSC Concern Kalashnikov; f.k.a. OJSC Izhmash; f.k.a. Scientific Production Association Izhmash Joint Stock Company)."

20.     Beginning in or before June 2018, and continuing through in or about March 2021, in the District of Maryland and elsewhere, the defendant,

**LARRY ALLEN VICKERS,**

did knowingly combine, conspire, confederate, and agree with **SEAN REIDPATH SULLIVAN, MATTHEW JEREMY HALL, JAMES SAWYER,** and other persons known and unknown, to do the following:

a.     to defraud the United States, namely the ATF, by interfering with and obstructing the lawful government functions of the ATF to restrict the transfer, possession and/or importation of machineguns and other firearms through the creation of law letters that contained material falsehoods and the submission of those letters to the ATF with applications and permits for the importation of firearms, on ATF Forms 6, in violation of 18 U.S.C. §371;

b.     to unlawfully import and cause to be imported into the United States NFA and GCA regulated firearms using false and fraudulent writings submitted to the ATF, in violation of 18 U.S.C. § 922(l);

c.     to knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, namely the ATF, representations with respect to information, under Chapter 44 of Title 18 of the United States Code, relating to the acquisition of firearms, to wit: law letters that contained false representations that the machineguns and/or short-barreled rifles identified in the law letters were dealer sales samples for law enforcement demonstration purposes, which were used to make knowingly false representations in block 10 of ATF Form 6, an application and permit for importation of firearms, and attached the same law letters to ATF Forms 6, forms that were required to be kept in the records of individuals licensed under Chapter 44, in violation of 18 U.S.C. § 924(a)(1)(A); and

d.      to knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, namely the ATF, materially false, fictitious, and fraudulent statements and representations, namely law letters signed by defendants **HALL,** and **SAWYER,** requesting the demonstration of machineguns and/or short-barreled rifles, in violation of 18 U.S.C. §1001(a)(2).

### Purpose of the Conspiracy

21.     It was the purpose of the conspiracy of the defendants to:

a.      unlawfully acquire and facilitate the acquisition of machineguns and other firearms not permitted to be imported into the United States, by means of fraud and materially false statements and representations; and

b.      to resell those machineguns and other firearms not permitted to be imported into the United States, for profit or to keep them for their own use and enjoyment.

### Manner and Means of the Conspiracy

The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, but was not limited to, the following:

22.     The defendants sought to and did acquire machineguns and/or other restricted firearms by falsely representing that the firearms would be used as dealer sales samples for demonstration to law enforcement offices, specifically the Coats Police Department, and the Ray Police Department.  These false representations were contained in law letters on Coats Police Department letterhead, and Ray Police Department Letterhead.

23.     Defendant **SULLIVAN** would submit the law letters containing materially false information with ATF Forms 6, to obtain permits from the ATF to import the otherwise prohibited machineguns and other restricted weapons into the United States.

24.     Defendant **SULLIVAN** would import into the United States the machineguns and restricted weapons from manufacturers and sources outside the United States, then transfer some of the weapons to defendants **VICKERS,** and others.

25.     Defendant **SULLIVAN** kept some of the machineguns and other restricted weapons he imported in the Trident inventory for later transfer and/or retention for his personal use.

26.     Defendant **VICKERS** kept some of the machineguns and other restricted weapons that were transferred to him in his personal collection and transferred other machineguns and restricted weapons to other FFLs and third parties.

27.     Defendants **HALL** and **SAWYER** signed law letters in which they typically requested demonstration of machineguns and firearms for possible future purchase for the use of officers in the performance of their official duties. The letters also stated that the weapons were particularly suitable for use as law enforcement weapons due to cost and availability.   At the time that they signed the law letters, defendants **HALL** and **SAWYER,** had no expectation or understanding that such weapons would ever be demonstrated to their respective law enforcement agencies.

a.     Between in or about July 2012, to in or about May 2020, **HALL** signed and submitted approximately 53 law letters that requested demonstration of 92 firearms, of which number approximately 29 firearms were imported by **SULLIVAN.**

b.     Between in or about August 2015, to in or about August 2020, **SAWYER** signed and submitted approximately 32 law letters that requested demonstration of approximately 73 firearms, of which number approximately 21 firearms weapons were imported by **SULLIVAN.**

10

28.     These letters were, in turn, provided either directly to defendant **SULLIVAN** or through defendant **VICKERS** and **TAFOYA.**

29.     **SULLIVAN** submitted the law letters containing materially false facts to the ATF Imports Branch as attachments to ATF Forms 6.

### Overt Acts

30.     In furtherance of the conspiracy, and to effect the purposes thereof, the defendants and others known and unknown to the Grand Jury committed the following overt acts, among others, in the District of Maryland and elsewhere:

*B&T Prototypes*

a.     On or about August 6, 2018, the following electronic communication took place between **SULLIVAN** and **VICKERS** and **VICKERS** and **SAWYER:**

> **SULLIVAN** to **VICKERS**: Would you mind getting your chief to do a demo letter for me for a couple prototypes from Karl?
> **VICKERS** to **SULLIVAN**: I'll certainly try Let's give it's shot
> **VICKERS** to **SULLILVAN**: Also can you email me what exactly you want on your demo letter?
> **SULLIVAN** to **VICKERS**: Just did.
> **VICKERS** to **SULLIVAN**: Got it I'm pinging my LE guy now …..
> **VICKERS** to **SAWYER**: Chief My importer- who is a great guy, former Marine and has really done me Solid- asked me to ask you if you could do a demo letter for him As a favor to me I'd like to ask you to do it- normally I'd never ask for Anyone else but he has went above and beyond for me If your good with it I sent the letter template he needs to your email
> **SAWYER** to **VICKERS**: I never would either. However as a personal favor to you I'll make this one time exception. You are the only one I've ever done these for because I consider you a good friend brother.
> **VICKERS** to **SAWYER**: Thanks I really appreciate it Consider this a one time occurrence One and Done
> **SAWYER** to **VICKERS**: You got it brother.
> **SAWYER** to **VICKERS**: He owes you one now!
> **VICKERS** to **SAWYER**: Yep !! He has really went above and beyond for me or I would have never asked !!
> **SAWYER** to **VICKERS**: Understood glad I can help bro
> **VICKERS** to **SAWYER**: Thanks!!
> **VICKERS** to **SULLIVAN**: Hey my guy says he will do it for you this once no problem

**SULLIVAN** to **VICKERS**:   Thanks. And tell him it's much appreciated
**VICKERS** to **SULLIVAN**:   Will do !

      b.     On or about August 8, 2018, **SAWYER** signed a law letter on Ray Police Department letterhead, addressed to Trident Rifles, LLC, in Odenton, Maryland, requesting demonstrations of a B&T AG APC9K, Cal. 9mm, "Submachinegun" [sic], a B&T AG APC9KSD, Cal. 9mm, Submachinegun [sic], a B&T AG APC40, Cal. 40 S&W, "Submachinegun" [sic], and a B&T AG GHM9K, Cal. 9mm, "Submachinegun" [sic], "for possible future purchase and use of our officer in the performance of his official duties"

      c.     On or about August 9, 2018, **SULLIVAN** attached **SAWYER's** August 8, 2018, law letter, to and in support of his request to ATF for an exemption to import a B&T AG APC9K, Cal. 9mm, machinegun, a B&T AG APC9KSD, Cal. 9mm, machinegun, a B&T AG APC40, Cal. 40 S&W, machinegun, and a B&T AG GHM-Police, Cal. 9mm, machinegun APC40 machine.

      d.     On or about November 20, 2018, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating he had imported a APC9KSD machinegun having serial number US18-28612.

      e.     On or about March 14, 2020, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating he imported a B&T AG APC40 machinegun having serial number US19-33205.

*STG90s*

      f.     On or about May 22, 2018, **SULLIVAN** submitted an ATF Form 6 to ATFs Imports Branch requesting permission to import ten (10) San Swiss SG550P pistols, among other weapons.

g.      On or about July 11, 2018, **VICKERS** sent the following text message to **SULLIVAN**, "Hey bro we have to stay on top of this Marc exporter guy in Switzerland. He isn't exactly a go getter. I've had 2 pistols to be exported out of Switzerland from him for months and he is dragging ass. These STG90's are far more important than the pistols so I want to stay on top of this guy."

h.      On or about January 14, 2019, the following text message exchange took place between **VICKERS** and **SULLIVAN**:

> **VICKERS**: "You get the rifles?"
> **SULLIVAN**: "Yep"  [Sends pictures]



> **VICKERS**:  "Having those in the USA is a big fucking deal!  EX Swiss military STG90's. A big fucking deal.  Maybe the only ones in the USA. Very well done bro! Prime rib on me at SHOT!"
> **VICKERS**:  "Both rifles look to be in good shape.  If you don't mind could you send me the one on the bottom?  The one with the standard Swiss Army sling on it?"

13

SULLIVAN: "No problem"

i.     On or about January 27, 2019, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating that he had imported two (2) San Swiss SG550P pistols having serial numbers 2268797 and 2116346.

### *CR223 & CR308*

j.     On or about June 27, 2018, **SAWYER** signed a law letter on Ray Police Department letterhead, addressed to Vickers Tactical, requesting demonstrations of a CG-Haenel CR 223 short-barreled rifle and a CG Haenel CR 308 short-barreled rifle, among other weapons.

k.     On or about June 27, 2018, **VICKERS** signed a letter on Vickers Tactical Inc. letterhead, addressed to Trident Rifles LLC in Odenton, Maryland, stating the firearms enumerated in paragraph 28.j. *above* would be used in a demonstration to the Ray Police Department by Vickers Tactical Inc.

l.     On or about July 6, 2018, **SULLIVAN** submitted an ATF Form 6 to ATF's Imports Branch requesting permission to import the firearms enumerated in paragraph 28.j. *above*. **SULLIVAN** represented in Block 10 of the ATF Form 6 that the purpose of the importation was "Dealer Sales Sample Letter" and attached **SAWYER**'s aforementioned June 27, 2018 law letter and **VICKER**'s aforementioned June 27, 2018, letter.

m.     On or about June 5, 2019, the following electronic communication took place between **SULLIVAN** and **VICKERS**:

> **SULLIVAN:** Do you want the haenel's?
> **SULLIVAN**: Got 1x556 and 1x308 for you if you want
> **VICKERS**: No I'll skip them  You can have them if you want
> **SULLIVAN**: Copy

n.     On or about July 20, 2019, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating he had imported a CG-Haenel CR 223 short-barreled rifle having serial

number CR004170 and a CG-Haenel CR 308 short-barreled rifle having serial number CR3-000597.

> o.    On or about August 25, 2019, username "Trident Rifles LLC" posted the following advertisement on sturmgewehr.com, an internet firearms marketing site:



> p.    On or about June 20, 2018, **SAWYER** signed a law letter on Ray Police Department letterhead, addressed to **VICKERS** and Vickers Tactical, Inc., requesting demonstrations of weapons, including a Heckler & Koch MR308A3 short-barreled rifle and a Heckler & Koch G28 short-barreled rifle.

> q.    On or about June 27, 2018, **VICKERS** signed a letter on Vickers Tactical Inc. letterhead, addressed to Trident Rifles LLC in Odenton, Maryland, stating the firearms enumerated in paragraph 28.p. *above* would be used in a demonstration to the Ray Police Department by Vickers Tactical Inc.

r.      On or about June 29, 2018, **SULLIVAN** submitted an ATF Form 6 to ATF's Imports Branch requesting permission to import firearms, including those enumerated in paragraph 28.p. *above*. **SULLIVAN** represented in Block 10 of the ATF Form 6 that the purpose of importation was "Dealer Sales Sample Letter" and attached **SAWYER**'s aforementioned June 20, 2018, law letter and the aforementioned June 27, 2018, Vickers Tactical Inc. letter.

s.      On or about June 7, 2020, the following WhatsApp conversation took place between **SULLIVAN** and C.F.:

> **SULLIVAN:** [Sends photo of a rifle having model designation MR 308]



> **SULLIVAN:** Any interest?
> C.F.:  Of course. For myself
> C.F.: What do you want for it? I need one for a host
> **SULLIVAN:** Its in Switzerland right now
> **SULLIVAN:** I'll confirm I can get it tomorrow

t.      On or about July 19, 2020, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating he imported a Heckler & Koch G28 rifle having serial number 144-006259. **SULLIVAN** noted a discrepancy on the Form 6A indicating the rifle was a "standard rifle" and not a short-barreled rifle.

### *FN (Herstal) FN/FAL*

u.      On or about August 1, 2019, **HALL** signed a law letter on Coats Police Department letterhead, addressed to **SULLIVAN** and his business, Trident LLC, in Odenton, MD, requesting a demonstration of a FN (Herstal) FN/FAL machinegun.

v.      On or about August 10, 2019, **SULLIVAN** submitted an ATF Form 6 to ATF's Imports Branch requesting permission to import a FN (Herstal) FN/FAL machinegun. **SULLIVAN** represented in Block 10 of the ATF Form 6 that the purpose of importation was "Dealer Sales Sample Letter" and attached **HALL**'s aforementioned August 1, 2019, law letter.

w.      On or about February 15, 2020, **SULLIVAN** filed an ATF Form 6A with Imports Branch indicating he had imported a FN (Herstal) FN/FAL machinegun having serial number 63700.  **SULLIVAN** noted a discrepancy on the Form 6A indicating the model of the machinegun was "FAL-BE."

*MAG 58*

x.      On or about September 24, 2019, **HALL** signed a law letter on Coats Police Department letterhead, addressed to **VICKERS** and Vickers Tactical Inc., in Waxhaw, North Carolina, requesting a demonstration of a FN (Herstal) MAG58 machinegun for "possible future purchase and use by our officers in the performance of their official duties."

y.      On or about September 24, 2019, **VICKERS** signed a letter on Vickers Tactical Inc. letterhead, addressed to Trident Rifles LLC in Odenton, Maryland, stating the FN (Herstal) MAG58 would be used in a demonstration to the Coats Police Department by Vickers Tactical Inc.

z.      On or about September 25, 2019, the following electronic communication took place between **VICKERS** and **HALL**:

> **VICKERS**:  Hey brother t shirts are on the way to you !
> **HALL**:  Thank you

aa.      On or about October 07, 2019, **SULLIVAN** submitted an ATF Form 6 to ATF's Imports Branch requesting permission to import a FN (Herstal) MAG58 machinegun. **SULLIVAN** represented in Block 10 of the ATF Form 6 that the purpose of importation was

"Dealer Sales Sample Letter" and attached **HALL**'s aforementioned September 24, 2019, law letter and **VICKERS**' aforementioned September 24, 2019, letter.

   bb.   On or about February 15, 2020, **SULLIVAN** filed an ATF Form 6A with ATF's Imports Branch indicating he had imported a FN (Herstal) MAG58 machinegun having serial number 20622.

   cc.   On or about July 22, 2018, username "Trident Rifles LLC" posted the following advertisement on sturmgewehr.com, an internet firearms marketing site:



   dd.   On or about May 20, 2019, the following electronic communication took place between **SULLIVAN** and **VICKERS**:

> **SULLIVAN**: Need a favor for Karl…he's trying to get these HKs out of Switzerland with the new law change that's coming there now. You'll get an Army SCW FOC. Just need these letters done.
> **SULLIVAN**: [Sends letter templates]
> **VICKERS**: Ok so the demo letters done ASAP ?
> **VICKERS**: I just sent them on to my Chief of Police Buddies

ee.     On or about May 21, 2019, the following electronic communications took

place between **VICKERS** and **HALL** and **VICKERS** and **SULLIVAN**:

> **VICKERS** to **HALL**:  Hey bro I emailed a demo letter request for a good
>                friend If you can help out
> **HALL** to **VICKERS**:  [Sends a scanned document]
> **VICKERS** to **HALL**:  Thanks brother!!
> **VICKERS** to **SULLIVAN**: Check your email
> **SULLIVAN** to **VICKERS**: Got it. Thank you

ff.     On or about May 20, 2019, **HALL** signed a demonstration letter on Coats

Police Department letterhead addressed to Trident Rifles, LLC, requesting demonstrations of

weapons, including a Heckler & Koch MP2000 machinegun and a Heckler & Koch SMG II

machinegun.

gg.     On or about May 23, 2019, **SULLIVAN** signed a letter on Trident LLC

letterhead, addressed to B&T USA, Tampa, FL, another federally licensed importer, indicating

the firearms mentioned in paragraph 28.xx. *above,* would be used in a demonstration to the Coats

Police Department by Trident LLC.

hh.     On or about June 18, 2019, B&T USA submitted an ATF Form 6 to ATF's

Import Branch requesting permission to import the firearms mentioned in paragraph 28.xx.

*above,* and attached **HALL's** aforementioned May 20, 2019, law letter, and **SULLIVAN's**

aforementioned May 23, 2019, letter, representing in Block 10 of the form that the weapon

requested were to be used as "Other – For Demonstration Purposes."

18 U.S.C. § 371

## COUNT TWO
### (Conspiracy to Violate IEEPA and the Ukraine-/Russia-Related Sanctions Regulations

1.     The allegations in paragraphs one, as well as fifteen through nineteen of the General Allegations are hereby realleged and incorporated by reference herein as though fully set forth in this Count of the Indictment.

2.     From at least as early as in and around July 2014 and continuing until at least in and around March 2021, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### LARRY ALLEN VICKERS,

did knowingly and willfully combine, conspire, confederate, and agree with others to violate the IEEPA, contrary to Title 50, United States Code, Section 1705(a) and (c), Executive Order 13661, and the Ukraine-/Russia-Related Sanctions Regulations, Title 31, Code of Federal Regulations, Sections 589.201 and 589.213.

### PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for **LARRY ALLEN VICKERS** and his co-conspirators to evade the U.S. sanctions against Russian firearms manufacturer JSC Kalashnikov Concern ("Kalashnikov Concern") by: (a) acquiring firearms, firearms parts, blueprints, and technical plans from Kalashnikov Concern; (b) providing promotional videography and marketing services to Kalashnikov Concern; (c) receiving services from Kalashnikov Concern including engineering and technical design services, videography and video editing services, and preferential access to Kalashnikov Concern firearms, facilities, technical processes, personnel, and associates; and (d) receiving funding and reimbursements from and on behalf of Kalashnikov Concern.

## OBJECTS OF THE CONSPIRACY

4.      It was a part and an object of the conspiracy that the defendant, together with others, willfully and knowingly violated the IEEPA, as well as the Executive Orders and regulations promulgated thereunder, to wit: by providing, and causing other United States persons to provide, funds, goods, and services by, to, and for the benefit of Kalashnikov Concern, without having first obtained the necessary authorization or license from OFAC.

5.      It was a further part and object of the conspiracy that the defendant, together with others, willfully and knowingly violated the IEEPA, as well as the Executive Order and regulations promulgated thereunder, to wit: by receiving, and causing other United States persons to receive, funds, goods, and services from Kalashnikov Concern, without having first obtained the necessary authorization or license from OFAC.

6.      It was a further part and object of the conspiracy that the defendant, together with others, willfully and knowingly violated the IEEPA, as well as the Executive Order and regulations promulgated thereunder, to wit: by engaging, and causing other United States persons to engage, in transactions for the purpose of evading and avoiding the requirements of United States law with respect to the provision and receipt of funds, goods, and services, to, from, and for the benefit of Kalashnikov Concern, without having first obtained the necessary authorization or license from OFAC.

All in violation of Title 50, United States Code, Section 1705(a) and (c), Executive Orders 13660, 13661, and 13662, and Title 31, Code of Federal Regulations, Section 589.201.

**FORFEITURE**

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 924(d), 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C.§ 2461(c), in the event of a defendant's conviction of any of the offenses charged in Counts One or Two of the Indictment.

**Firearms Forfeiture**

2.      Upon conviction of the offense charged in Counts One, the defendant,

**LARRY ALLEN VICKERS,**

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 924(d) and 981(a)(1)(C) and 28 U.S.C. § 2461(c), any firearms or ammunition involved in the offenses and any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction.

**IEEPA Violations**

4.      Upon conviction of the offense charged in Count Two, the defendant,

**LARRY ALLEN VICKERS**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s) of conviction.

**Substitute Assets**

6.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants,

    a.  cannot be located upon the exercise of diligence;

    b.  has been transferred, or sold to, or deposited with a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 924(d)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

PAUL CUNNINGHAM
Digitally signed by PAUL CUNNINGHAM
Date: 2023.10.03 14:34:58 -04'00'

Date:   October 3, 2023

*Erek L. Barron*
Erek L. Barron
United States Attorney

*Jennifer Kennedy Gellie*
Jennifer Kennedy Gellie
Acting Chief, Counterintelligence and
    Export Control Section
National Security Division
U.S. Department of Justice

*Margaret Moeser*
Margaret Moeser
Acting Chief, Money Laundering and
    Asset Recovery Section
Criminal Division
U.S. Department of Justice